**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRICIA VARRASSO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ARLEN BARKSDALE, et al., <br><br> Defendants. | Case No. 13-cv-1982-BAS-JLB <br><br> **ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS** <br><br> **[ECF Nos. 104, 105, 106]** |

**I.   PROCEDURAL HISTORY**

On August 26, 2013, Plaintiffs filed a Complaint against seventeen defendants alleging seventeen different causes of action. (ECF No. 1.) Two weeks later, Plaintiffs amended this Complaint adding five Defendants and three causes of action. (ECF No. 7.) After Defendants filed various Motions to Dismiss, in response, Plaintiffs filed a Motion to Amend, which was granted by the Court. (ECF No. 20, 40.) Plaintiffs then filed a Second Amended Complaint ("SAC"). (ECF No. 41.)

On July 3, 2014, this Court granted Defendants' Motions to Dismiss without

prejudice, finding the SAC failed to contain a short and plain statement of relief and failed to plead with particularity who, what, when and how each misrepresentation was made. (ECF No. 70.) On July 17, 2014, Plaintiffs filed a Third Amended Complaint ("TAC"). Plaintiffs pared down the causes of action to nine. (ECF No. 71.) After oral argument on the Motions to Dismiss, the Court granted with prejudice the Motions to Dismiss the third cause of action for violation of California Corporations Code §25503, the ninth cause of action for civil conspiracy and the fifth through eighth causes of action alleging RICO violations. (ECF No. 102.) However, the Court gave Plaintiffs one last opportunity to amend their causes of action for federal and California securities fraud as well as controlling person liability under California Corporations Code §25504. (*Id*.)

Plaintiffs now file their Fourth Amended Complaint ("4AC"). (ECF No. 103.) In the 4AC, Plaintiffs appear to drop allegations against twelve Defendants. (*Id*.) To the three original counts for violations of federal and California securities fraud and California controlling person liability, Plaintiffs add two counts: one for controlling person liability under federal law and one for conversion. (*Id*.) Defendants file three substantially identical Motions to Dismiss this Complaint. (ECF Nos. 104, 105, 106.)

## II. STATEMENT OF FACTS

Although certainly not a paragon of clarity, the 4AC now alleges the following facts. Plaintiff Mrs. Varrasso had been married to Defendant Barksdale and trusted that he had her best interests at heart. (ECF No. 103, ¶¶ 20, 21, 29, 87.) Mrs. Varrasso's current husband, Plaintiff Mr. Varrasso, had a stroke so she relied on Barksdale to advise her on financial matters. (¶¶ 18, 21, 88.) Mrs. Varrasso's father Harold Will "appointed Mrs. Varrasso to act as his attorney-in-fact in his durable power of attorney" until his death in 2014. She is now substituted in as Plaintiff on behalf of Will in her representative capacity as executor of his estate and his sole heir. (¶¶23, 24.) Barksdale's "significant other" is Defendant Mabbett. (¶ 25.)

Barksdale told Mrs. Varrasso that his company, Sun West Solar was a solar

energy company lawfully doing business in California. (¶2.) He encouraged Mrs. Varrasso to invest in Sun West Solar, which was "the lead investment vehicle" for the Vaya Con Dios Solar Park Project. (¶¶2, 38, 97.) The Vaya Con Dios Solar Park was a project purportedly being developed by Desmon Energy, LLC. (¶46.) The plan was to harvest solar energy at a site being developed outside of Joshua Tree and then sell the energy back to Southern California Edison ("SCE") and San Diego Gas and Electric ("SDGE") for a substantial profit. (¶¶92-95, 97.) At the time, Barksdale represented that he was working on this Vaya Con Dios Solar Park in collaboration with a host of other affiliates and partners including Desmon Energy LLC, Global Renewable, Desmon Properties, Hawk Energy, Hawk Solar Farms and other Con Dios solar parks. (¶98.)

In October 2011, Barksdale delivered a prospectus to Mrs. Varrasso about the Vaya Con Dios Solar Park Project which contained various representations including that Desmon Properties had twenty acres of land near Joshua Tree ripe for the collection of solar energy (¶¶97, 101.) Barksdale told Plaintiffs the project was nearly completed and just needed financial backing. (¶106.) When Mrs. Varrasso expressed reluctance to invest, Barksdale offered her a "first position" in a deed of trust in the Texan Resort as extra security. (¶108.) Barksdale and Mabbett took Mrs. Varrasso to the Texan Resort to show her what she would own if her investment did not bear fruit. (¶108.)

In reliance on these representations, Plaintiffs gave $652,017.22 to Sun West Solar through Barksdale. (¶117.) After investing the money, Mrs. Varrasso learned the Vaya Con Dios Solar Park project was a sham (¶2) and Sun West Solar was a façade. (¶3.) Mrs. Varrasso further learned: (1) Desmon Properties did not own or control land near Joshua Tree; (2) the other affiliates and partners were just entities owned or controlled by Barksdale, his significant other Mabbett, or both; (3) the project was not even close to completion; (4) Sun West Solar was not authorized to do business in California; and (5) the Texan Resort was heavily encumbered and Mrs.

Varrasso did not have a "first position" deed of trust in the property. (¶¶ 40, 98, 130, 133.) The 4AC alleges that Barksdale and Mabbett immediately took the money invested and converted it for their own use. (¶ 128.)

In addition, the 4AC alleges that each of the seven remaining entity Defendants: SunWest Solar Inc., Desmon Energy LLC, Global Renewable Energy LLC, Desmon Properties LLC, Hawk Energy Group LLC, The Barksdale Family Trust and Desmon Properties LLC d/b/a Texan Resort, are the alter egos of and controlled by Barksdale, Mabbett or both. (¶¶148, 149.) The 4AC alleges generally that each entity was a mere shell and sham without capital, assets or corporate formalities. (¶152(a).)

Specifically, the 4AC alleges these entities were "so inadequately capitalized that, compared with the business to be done by each . . . and the risk of loss attendant thereto, each of their capitalizations were illusory or trifling." (¶152b.) The 4AC alleges further that Barksdale and Mabbett "used assets of each of their respective Alter Ego Entities for their personal use, caused assets . . . to be transferred to them without adequate consideration, and withdrew funds from [the entities'] . . . bank accounts for their personal use" and "caused funds to be withdrawn from each of [the entities] . . . for the purpose of avoiding and preventing attachment and execution by creditors . . . rendering each of the [entities] insolvent and unable to meet their obligations." (¶¶152(c), (e).) Finally, the 4AC alleges that no corporate formalities were observed with respect to these entities. (¶152(d).))

**III.   LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *See Cahill v. Liberty Mutual Ins. Co.*, 80 F.2d 336, 337-38 (9th Cir. 1996).

"The PSLRA [Private Securities Litigation Reform Act of 1995] significantly altered pleading requirements in private securities fraud litigation by requiring that a complaint 'plead with particularity both falsity and scienter.'" *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002) (quoting *Roncino v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001)). Plaintiffs must first "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading and, if an allegation regarding the statement or omission is made on information and belief . . . state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

Plaintiffs must "allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." *In re Daou Systems, Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005) (citing *In re Silicon Graphics Secs. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999)). The Plaintiffs must also "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Gompper*, 298 F.3d at 895 (quoting 15 U.S.C. § 78u-4(b)(1)). In general, a corporation's optimistic predictions do not rise to the level of false or misleading statements unless the plaintiff alleges facts supporting the inference that the predictions were known to be false or misleading at the time they were made. *Ronconi*, 253 F.3d at 430.

Although the court "must accept plaintiff's allegations as true and construe them in the light most favorable to the plaintiff," ultimately the court should review "the complaint in its entirety to determine whether the totality of facts and inferences demonstrate a strong inference of scienter." *Gompper*, 298 F.3d at 896. In *Gompper*, the Ninth Circuit considered the "inevitable tension" that arises between the different standards in Rule 12(b)(6) and that outlined in the PSLRA, concluding:

> Because we believe Congress made it crystal clear that the PSLRA's pleading requirements were put in place so that only complaints with particularized facts giving rise to a strong inference of wrongdoing survive a motion to dismiss … when determining whether plaintiffs have

> shown a strong inference of scienter, the court must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs.

*Gompper*, 298 F.3d at 897.

As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a). However, repeated failure to cure deficiencies by amendments previously allowed may be grounds for denying leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

## IV.   ANALYSIS

As a preliminary matter, Plaintiffs fail to reallege any claims against twelve of the original Defendants. These twelve defendants move for dismissal. (ECF No. 104.) Plaintiffs fail to Respond to this Request in their Response to the Motion to Dismiss, hence the request is granted and Defendants Desmon-Epic Mohave Solar I, New Mexico Solar Power LLC, Elite Environmental Group LLC2, Granite Falls LLC, Desmon Design Services Ltd., High-Tech Digital Design, Epic Desmon Arizona Solar Inc., Mojave Solar LLC, and Con Dios Solar 1, 2, 3 and 33 are dismissed from the action without prejudice.

In addition, Plaintiffs appear to be adding 63 other Defendants (Con Dios Solar companies) as Doe defendants. (¶¶79-86.) However, Plaintiffs did not seek leave to amend to add these Defendants and Plaintiffs admit that they "are ignorant as to the true nature of the Con Dios Solar, LLC's capacities in this scheme." (¶85.) Hence, to the extent Plaintiffs are seeking to add these Con Dios Solar companies as Defendants, the request is denied.

Finally, Defendants move pursuant to Fed. R. Civ. P. Rule 12(b)(6) and Rule 9(b) to dismiss the securities fraud allegations of the 4AC for the following reasons: (1) the allegations are mere puffing protected under the Safe Harbor provisions of securities law; (2) there are no allegations of justifiable reliance; (3) there are no allegations of economic loss caused by the Defendants; (4) the complaint lacks particularity especially with regard to scienter; and (5) Plaintiffs fail to plead fraud

with particularity. (ECF No. 104, 105, 106.) Defendants also move to dismiss the controlling person causes of action and the conversion cause of action. Finally, pursuant to Fed. R. Civ. P. Rule 8(a)(1), Defendants argue the complaint gives them insufficient notice because the Plaintiffs and Defendants are undifferentiated throughout. (*Id.*) Each of these allegations will be addressed separately.

### A.   Counts One and Two for Securities Fraud Violations

#### 1.   Safe Harbor Provisions

Pursuant to 15 U.S.C. §78u-5(c), a defendant is not liable for forward-looking statements if the statements are accompanied by meaningful cautionary statements, are immaterial, or if plaintiff fails to prove that the forward-looking statement was made with actual knowledge that it was false or misleading. In general, this subsection was enacted to protect optimistic projections of future earnings, especially when investors are cautioned that these are simply projections and may not ultimately bear fruit. *See Roncino v. Larkin*, 253 F.3d 423, 430 (9th Cir. 2001). In this case, Defendants argue the allegedly fraudulent misstatements were actually just puffing and, in the case of the prospectus, were accompanied by meaningful cautionary statements.

However, the misstatements in the 4AC are not mere puffing and not just optimistic forward-looking statements. Instead, the 4AC alleges that Barksdale told Mrs. Varrasso that his company Sun West Solar was a solar energy company lawfully doing business in California, when in fact it was a façade without any authorization to do business in California. (¶¶2, 3.) He told her that Vaya Con Dios Solar Park project was a legitimate project, when in fact it was a sham. (¶¶ 2.) He represented that he was working on this Vaya Con Dios Solar Park in collaboration with a host of other affiliates and partners including Desmon Energy LLC, Global Renewable, Desmon Properties, Hawk Energy, Hawk Solar Farms and other Con Dios solar parks when in fact these were all entities controlled by him, his significant other Mabbett or both. (¶¶45, 52, 57, 59, 65, 67, 98, 84.) He told all three Plaintiffs the project was

nearly completed and just needed financial backing when in fact the project was a sham and not even close to completion. (¶¶2, 106, 133.)

The 4AC alleges Barksdale delivered a prospectus to Mrs. Varrasso about the Vaya Con Dios Solar Park Project which contained various representations including that Desmon Properties had twenty acres of land in Joshua Tree ripe for the collection of solar energy when, in fact, it did not.[1] (¶¶101, 133.)

When Mrs. Varrasso expressed reluctance to invest, Barksdale offered her a "first position" in a deed of trust in the Texan Resort as extra security when in fact the Texan Resort was heavily encumbered and Mrs. Varrasso did not have a "first position" deed of trust in this property. (¶¶ 108, 130, 133(f).)

These alleged misstatements are not forward-looking statements inaccurately painting a rosy picture of the future. They are actual misstatements of current facts that the 4AC claims were untrue. Therefore, the Safe Harbor provisions of §78u-5(c) are inapplicable.

### 2.     Allegations of Justifiable Reliance and Loss Causation

"The causation requirement of Rule 10b-5 securities fraud cases includes both transactions causation, that the violations in question caused the plaintiff to engage in the transaction, and loss causation, that the misrepresentations or omissions caused the harm." *Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999) (quotation omitted.) Defendants argue Plaintiffs fail to allege either.

Transaction causation is "but for" causation. Thus, Plaintiffs must allege that "but for" the misrepresentations, they would not have invested in the solar company. *Id*. In the 4AC, Plaintiffs allege just that. They claim they justifiably relied on Defendants' fraudulent statements when they made the investment of funds and, but for the misrepresentations, would not have invested funds whatsoever. (¶¶158, 175.)

---

[1] Although Defendants dispute the validity of many of these allegations, for purposes of a motion to dismiss the Court must accept all factual allegations pleaded in the complaint as true. *See Cahill v. Liberty Mutual Ins. Co.*, 80 F.2d 336, 337-38 (9th Cir. 1996).

Therefore, Plaintiffs adequately allege justifiable reliance.

Loss causation is the equivalent of proximate cause. *Binder*, 184 F.3d at 1066. Thus, "the plaintiff must show that the fraud caused, or at least had something to do with, the decline in the value of the investment after the securities transaction took place." *Id*. "In privately held companies, plaintiffs more commonly prove loss by showing that a misrepresentation or omission caused him or her to engage in a transaction and that the revelation of the truth is directly related to the economic loss alleged." *WPP Luxembourg Gamma Three Sari v. Spot Runner, Inc.*, 655 F.3d 1039, 1053 (9th Cir. 2014).

In this case, Plaintiffs do not allege that they experienced a loss because of poor performance of the solar company. Instead, they allege that the company they were investing in was not as represented, and thus they experienced a loss. (¶175.) They allege that Sun West Solar had no value whatsoever, thus when they were misled into investing over $652,000, they lost their investment and received nothing in return. (¶¶5, 165.) Since the 4AC alleges that they lost their investment because they were induced to invest in a sham company, the revelation of the truth is directly related to the economic loss alleged.

### 3. Lack of Particularity with Regard to Scienter

"To establish liability under §10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011) (quotation omitted.) "Under the PSLRA, a plaintiff must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id*. (quotation omitted.) "A complaint adequately pleads scienter under the PSLRA only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. (quotation omitted.)

The 4AC alleges that Barksdale and Mabbett "set to lure Plaintiffs to hand over

cash by concocting a scheme involving solar power development." (¶90.) As part of this scheme, these two Defendants represented that Sun West Solar was a valid company when it was a façade, that the Vaya Con Dios Park project was a legitimate project when it was a sham, took the Plaintiffs' money for their own personal use and failed to keep it invested in the companies for which it was intended. (¶¶2, 3, 128.) Assuming these facts are true, which this Court must for a motion to dismiss, the requisite scienter has been alleged with particularity.

### 4. Lack of Particularity with Regard to Fraud

Defendants argue that the 4AC fails to allege fraud with sufficient particularity. First, Defendants argue Plaintiffs fail to allege the who, what, when, where and how of the alleged fraud. The Court disagrees. Plaintiffs lay out specifically what statements were made, by whom, when and where. Second, Defendants claim Plaintiffs fail to allege facts showing the alleged representations were false. Again, the Court disagrees. Plaintiffs need not prove facts at this stage of the proceedings, merely allege facts. Plaintiffs allege that Barksdale and Mabbett represented their companies had value when they had none, were engaged in solar harnessing when they failed to own the land to harness it, had contracts pending with various utilities when they did not, and claimed they were involved with other companies and entities in the solar business, when in fact all the companies and entities were controlled or operated by them. This is sufficient particularity under Rule 9(b).

Defendants further allege that Plaintiffs fail to specify which Plaintiffs and which Defendants were involved in each misrepresentation, indiscriminately grouping them together. First with respect to the three Plaintiffs, the 4AC alleges that Mr. Varrasso had a stroke so Mrs. Varrasso acted on behalf of both of them in investing their money. Furthermore, the 4AC alleges that Mrs. Varrasso had a power-of-attorney with respect to her father Harold Will and invested his money first as his "attorney-in-fact" and later as executor of his estate. Therefore, the alleged

misrepresentations of the Defendants led her to invest money for herself, along with her husband and her father. The specifics as to whose money was invested at what point in time is laid out with specificity in the 4AC. (¶117.) This is sufficient particularity for the Defendants to distinguish the allegations among the three Plaintiffs.

With respect to the Defendants, the 4AC alleges that Barksdale and Mabbett were in a relationship. (¶25.) Their ownership of the various entity Defendants is laid out in the 4AC. (¶¶28, 31, 33, 37, 45, 51, 57, 65-67, 72, 76-77.) The 4AC alleges that Barksdale and Mabbett both made misrepresentations individually, through the Sun West Solar prospectus, and through their various entities that the entities were involved in the solar harnessing business and had contracts ready to execute with various public utilities when they did not. (¶¶99, 101-105, 133, 159-166.) The allegations with regard to Barksdale and Mabbett are laid out with sufficient particularity in the 4AC.

With respect to the remaining entity Defendants, the 4AC alleges that these entities were merely shell and sham entities used by Barksdale and Mabbett to hide assets. Specifically, the 4AC alleges that the entities had inadequate capitalization, that Barksdale and Mabbett took funds from the entities for their own personal use, rendering them insolvent and unable to meet their obligations, and that the entities failed to observe any corporate formalities but were merely used as shells to hide various assets from creditors. (¶152.) This is sufficient to pass muster under the Federal Rules of Civil Procedure and the PSLRA.

### B.   Controlling Person Causes of Action

In the third and fourth causes of action, Plaintiffs allege controlling person liability under both federal (third cause of action) and state (fourth cause of action) law. "Every person who, directly or indirectly, controls any person liable under" either the federal or state securities laws is also "liable jointly and severally with and to the same extent as the controlled person." 15 U.S.C. §78t(a); Cal. Corp. Code

§25504. "In order to prove a prima facie case [of controlling person liability], plaintiff must prove: (1) a primary violation of . . . securities laws . . . ; and (2) that the defendant exercised actual power or control over the primary violator." *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).

Although, as discussed above, Plaintiffs have sufficiently alleged a primary violation of federal and California securities laws, they impossibly claim that every Defendant is a controlling person of every other Defendant. The confusing allegations in the third and fourth causes of action include statements that Barkdale and Mabbett exercised power and control over SunWest Solar, Desmon Properties, Desmon Energy, Hawk Energy, Global Renewables and the Texan Resort. (¶¶183(a) and (b), 184(a), (c), (e), (f), (g).) So far so good. However, the 4AC then goes on to allege that Desmon Energy exercised power and control over SunWest Solar, Global Renewables and Hawk Energy, or, alternatively, SunWest Solar exercised power and control over Desmon Energy, Global Renewables and Hawk Energy. It also alleges that Desmon Properties exercised power and control over the Texan Resort. (¶¶183(c)-(f), 184(b)-(d).)

It is completely unclear from the allegations who is alleged to be the primary violator and who is alleged to have power and control over the other. Clarity on this point is particularly important in light of the earlier allegations in the securities violation causes of action that each of the entity defendants were merely shells and operated solely for Barksdale and Mabbett to hide and withdraw assets.[2]

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." "Each averment contained therein shall be 'simple concise and direct.'" *In re Splash Tech Holdings, Inc. Sec. Litig.*, 106 F. Supp. 2d 1059, 1073 (N.D. Cal. 2001) (quoting Fed. R. Civ. P., Rule 8(e).) Plaintiffs cannot leave it up to the Defendants and the court to try to

---

[2] To further confuse the matter, the 4AC sometimes refers to SunWest Solar and sometimes to SunWest Energy.

figure out exactly what the allegations are. *Id.* at 1064. "[P]uzzle-style complaints are an unwelcome and wholly unnecessary strain on the Defendants and the court system." *Id.* at 1075 (quotations omitted.) Since the allegations still fail to make clear what allegations are alleged against which defendant, these two causes of action are dismissed.

This is Plaintiffs' fifth attempt to articulate a claim that makes sense. The Court has given both written and oral direction. Nonetheless, the allegations in these two causes of action still do not make sense. Therefore, these two causes of action are dismissed with prejudice. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (repeated failure to cure deficiencies by amendment previously allowed may be grounds for denying leave to amend).

### C. Conversion Cause of Action

"Conversion is the wrongful exercise of dominion over the property of another." *Aaron v. Aguirre*, No. 06-CV-1451-H(POR), 2007 WL 959083, *10 (S.D. Cal. Mar. 8, 2007). "A cause of action for conversion requires allegations of Plaintiff's ownership or right to possession of the property; Defendant's wrongful act toward or disposition of the property, interfering with Plaintiff's possession; and damage to Plaintiff." *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil and Shapiro, LLP*, 150 Cal. App. 4th 384, 395 (2007). "California cases permitting an act for conversion of money typically involve those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others." *Id.* at 396. The 4AC alleges that Plaintiffs gave $652,017.22 to Barksdale to invest in Sun West Solar, which Barksdale and Mabbett took and converted for their own personal use. (¶¶117, 128.) These allegations, if they prove true, would constitute a cause of action for conversion.

### D. Rule 8 Failure to Give Notice

Defendants argue that the Complaint fails to differentiate among the various defendants sued in the case. Undifferentiated pleading against multiple defendants is

improper. *See Aaron v. Aguirre*, 2007 WL 959083 at *16, n.6. However, as discussed above, the 4AC alleges which misrepresentations were made individually by Barksdale or Mabbett, which misrepresentations were made through the Sun West Solar prospectus, and which misrepresentations were made by Barksdale or Mabbett through their various entities. (¶¶99, 101-105, 133, 159-166.) With respect to the remaining entity Defendants, the 4AC alleges that these entities were merely shell and sham entities used by Barksdale and Mabbett to hide assets. (¶¶ 148, 149, 152.) Finally, as discussed above, the 4AC adequately explains the role and investment of each Plaintiff. This is sufficient notice under Rule 8.

## V. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (ECF Nos. 104, 105, 106) are **GRANTED** in part and **DENIED** in part. Plaintiffs' third and fourth causes of action are dismissed with prejudice. With respect to the remaining causes of action, the motions to dismiss are denied. Furthermore, Defendants' request for Rule 11 Sanctions is **DENIED**.

IT IS SO ORDERED.

DATED: December 14, 2015

Hon. Cynthia Bashant
United States District Judge