# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRICIA VARRASSO, et al.,<br><br>                Plaintiffs,<br><br>  v.<br><br>ARLEN BARKSDALE, et al.,<br><br>                Defendants.<br><br>AND RELATED CROSS AND COUNTERCLAIMS. | Case No. 13-cv-1982-BAS-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART VARRASSO'S MOTION TO DISMISS [ECF NO. 123]; AND**<br><br>**(2) DENYING RUSSIAN RIVER, LTD.'S MOTION TO DISMISS [ECF No. 125]** |

    Defendants Arlen Barksdale, Global Renewable Energy LLC, Sun West Solar Inc. and Barksdale as Trustee for the Barksdale Family Trust ("counter-claimants") file counter-claims against Tricia Varrasso and Russian River, Ltd. ("Russian River") for breach of contract, breach of the covenant of good faith and fair dealing, intentional and negligent interference with prospective economic relations and

intentional interference with contract.[1] (ECF No. 112). Varrasso has moved to dismiss the counter-claims arguing the Court lacks jurisdiction over these state law claims, and that the allegations for each alleged cause of action fail to state a claim.[2] (ECF No. 123.) Russian River moves to dismiss the counter-claims arguing the claims are barred by the statute of limitations. (ECF No. 125.)

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons discussed below, Varrasso's Motion to Dismiss (ECF No. 123) is **GRANTED IN PART and DENIED IN PART**, and Russian River's Motion to Dismiss (ECF No. 125) is **DENIED.**

I.   BACKGROUND

   A. The Fourth Amended Complaint

In the Fourth Amended Complaint, Plaintiffs allege Defendant Arlen Barksdale converted approximately $650,000 of the Varrassos' money by making misrepresentations about his company, Sun West Solar. (ECF No. 103 ("4AC") ¶2.) He encouraged Tricia Varrasso to invest in Sun West Solar, which was "the lead investment vehicle" for the Vaya Con Dios Solar Park Project. (4AC ¶¶2, 38, 97.) The plan was to harvest solar energy at a site being developed outside of Joshua Tree and then sell the energy back to Southern California Edison ("SCE") and San Diego Gas and Electric ("SDGE") for a substantial profit. (4AC ¶¶92-95, 97.) Barksdale represented that he was working on this Vaya Con Dios Solar Park in collaboration with a host of other affiliates and partners including Desmon Energy LLC, Global Renewable, Desmon Properties, Hawk Energy, Hawk Solar Farms and other Con Dios solar parks. (4AC ¶98.)

---

[1] Although counter-claimants label these "counter-claim and cross-claim," there is, in fact, no cross-claim alleged. To the extent Russian River is a completely separate entity, counter-claimants would be alleging a third party complaint against Russian River. However, for the sake of simplicity, the court will simply refer to the allegations as counter-claims.

[2] Russian River joins in all the arguments raised by Varrasso. (ECF No. 124.)

In October 2011, Barksdale delivered a prospectus to Varrasso about the Vaya Con Dios Solar Park Project which contained various representations, including that Desmon Properties had twenty acres of land near Joshua Tree ripe for the collection of solar energy (4AC ¶¶97, 101.) Barksdale told Plaintiffs the project was nearly completed and just needed financial backing. (4AC ¶106.) When Varrasso expressed reluctance to invest, Barksdale offered her a "first position" in a deed of trust in the Texan Resort as extra security. (4AC ¶108.) Barksdale and Mabbett took Varrasso to the Texan Resort to show her what she would own if her investment did not bear fruit. (4AC ¶108.)

In reliance on these representations, in November 2011, Plaintiffs gave $652,017.22 to Sun West Solar through Barksdale. (4AC ¶117.) After investing the money, Varrasso learned the Vaya Con Dios Solar Park project was a sham (4AC ¶2) and Sun West Solar was a façade. (4AC ¶3.) Varrasso further learned: (1) Desmon Properties did not own or control land near Joshua Tree; (2) the other affiliates and partners were just entities owned or controlled by Barksdale, his significant other Mabbett, or both; (3) the project was not even close to completion; (4) Sun West Solar was not authorized to do business in California; and (5) the Texan Resort was heavily encumbered and Varrasso did not have a "first position" deed of trust in this property. (4AC ¶¶ 40, 98, 130, 133.) The 4AC alleges that Barksdale and Mabbett immediately took the money invested and converted it for their own personal use. (4AC ¶ 128.)

**B. The Counter-claims**

The counter-claims paint an alternative end to the story. (ECF No. 112 ("CoCl")). According to the counter-claims, on or about November 17, 2011, "Tricia Varrasso converted her shares of Sun West Solar, Inc. into a loan."[3] (CoCl

---

[3] Although the counter-claims allege that Varrasso converted shares into the loan "to help *counter-defendants* in the acquisition and development of solar projects," the court assumes this is in error and that the allegation is that Varrasso converted the shares into a loan to help *counter-claimants*, not counter-defendants.

¶13.) Varrasso and Russian River thereafter entered into an agreement with Barksdale, Global Renewable Energy LLC and Sun West Solar, Inc. "that was partly oral and partly written" in which Varrasso and Russian River "agreed to provide good will, financial and endorsement support to [the above defendants] in their effort to develop properties for solar energy collection and sale." (CoCl ¶¶11-12.) Counter-claimants allege Russian River Ltd. is an entity dissolved in 2013 in which Tricia Varrasso was "the sole owner . . . and its sole officer and/or director." (CoCl ¶5.)

In keeping with the agreement "to provide good will, financial and endorsement support," Russian River and the Barksdale Family Trust entered into an agreement covering the Varrassos' $650,000. (CoCl ¶¶11-12.) The agreement included a Promissory Note in which the Barksdale Family Trust agreed to pay back $645,000 over a twenty year period beginning May 20, 2012. (CoCl ¶14.) The Promissory Note stipulated to a 12% interest and was secured by a Deed of Trust, both of which are attached to the counterclaim. (*Id*.)

Counter-claimants allege that on or about July 30, 2013, Varrasso and Russian River breached the agreements by "anticipatorily repudiating and prematurely cancelling the Promissory Note and demanding any amount due that was inconsistent with the intent of the parties to the contract and inconsistent with the terms of the contract." (CoCl ¶¶20-21.) According to the counter-claims, this undermined the solar projects that were currently in the bid process. (CoCl ¶21.) In addition, the counter-claimants allege Tricia Varrasso "took equipment and records necessary for the operation of the solar projects without authorization" and "further made defamatory remarks about counter-claimants." (CoCl ¶21.) Counter-claimants allege this is what led to the downfall of the various solar park projects. (*Id*.)

## II.  ANALYSIS

### A. Compulsory Counter-claims

Varrasso and Russian River argue first that this Court has no jurisdiction over these state law claims. Under 28 U.S.C. §1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." If a counter-claim is compulsory, then "the federal court will have jurisdiction over it even though ordinarily it would be a matter for a state court." *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974).

For a counter-claim to be compulsory, it must "'arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim.'" *Mattel, Inc. v. MGA Entertainment, Inc.,* 705 F.3d 1108, 1110 (9th Cir. 2013), quoting Fed. R. Civ. P. 13(a)(1)(A). "'[T]ransaction' is a word of flexible meaning which may comprehend a series of occurrences if they have a logical connection." *Baker*, 417 U.S. at 469 n.1, citing *Moore v., New York Cotton Exchange,* 270 U.S. 593 (1926). Thus, the court applies a "logical relationship test" analyzing "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Hydranautics v. FilmTec Corp.,* 70 F.3d 533, 536 (9th Cir. 1995) (quotation omitted). "What matters is not the legal theory but the *facts.*" *Mattel,* 705 F.3d at 1110 (emphasis original).

In this case, the facts alleged in both the 4AC and the counter-claims revolve around the characterization of Varrasso's $650,000. The 4AC says it was used to purchase securities in a sham solar energy company and then converted to defendants' personal use. The counter-claims say it was loaned to counter-claimants in exchange for a promissory note to assist defendants in their solar energy company and that the valid solar energy company failed largely because of the actions of Varrasso and Russian River. The facts are so logically connected that they must be construed as compulsory and thus joining these claims is proper under

18 U.S.C. §1367(a) and Fed. R. Civ. P. 13(a). The Court finds none of the exceptions listed in 28 U.S.C. §1367(c) applicable to this case.

### B. Failure to State a Claim Under Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombley*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459

U.S. 519, 526 (1983).

Varrasso and Russian River claim none of the causes of action are sufficiently alleged and, therefore, must be dismissed under Rule 12(b)(6). Alternatively, they ask for a more definite statement under Rule 12(e).

### 1. Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

In order to allege a breach of contract, counter-claimants must allege: (1) the existence of a contract, (2) counter-claimants' performance under the contract, (3) Varrasso and Russian River's breach of the terms of the contract, and (4) damages that counter-claimants suffered as a result of Varrasso and Russian River's breach. *See McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1489 (2006).

Varrasso and Russian River claim the allegations supporting the existence of a contract are too nebulous and vague to adequately be considered a contract. Counter-claimants allege Varrasso and Russian River "agreed to provide good will, financial and endorsement support to [counter-claimants] in their effort to develop properties for solar energy collection and sale" (Co-Cl ¶¶11-12). Although the Court agrees "good will" and "endorsement support" are vague, counter-claimants go on to allege that the financial support aspect of this agreement was later formalized with a Promissory Note, a copy of which they attach. (CoCl ¶14.) Counter-claimants assert that the agreement to provide financial and other support was breached when Varrasso and Russian River: (1) "anticipatorily repudiate[ed] and prematurely cancel[ed] the Promissory Note and demand[ed] any amount due that was inconsistent with the intent of the parties to the contract and inconsistent with the terms of the contract" (CoCl ¶¶20-21), and (2) Varrasso "took equipment and records necessary for the operation of the solar projects without authorization" and "further made defamatory remarks about counter-claimants." (CoCl ¶21). As a result, the counter-claimants state they "lost over $3,000,000 due to lost and disrupted solar projects." (CoCl ¶23.) Construing these allegations in favor of the

1  counter-claimants and drawing all reasonable inferences from them in their favor,
2  the Court finds these allegations sufficiently allege a breach of contract cause of
3  action.
4        In California, there is implied in every contract a covenant of good faith and
5  fair dealing "so that neither party may do anything that will injure or destroy the
6  rights or interests of the other party to the agreement." *Corrigan v. Cox,* 254
7  Cal.App.2d 919 (1967). Since counter-complainants have adequately alleged a
8  breach of contract cause of action, so too must their cause of action for breach of
9  the implied covenant of good faith and fair dealing stand.
10       In the alternative, Varrasso and Russian River seek a more definite statement
11 under Rule 12(e). "A Rule 12(e) motion will be granted if a complaint 'is so vague
12 or ambiguous that a party cannot reasonably be required to frame a responsive
13 pleading.'" *Hsu v. OZ Optics, Ltd.*, 211 F.R.D. 615, 619 (N.D. Cal. 2002), quoting
14 Fed. R. Civ. P., Rule 12(e). Neither counter-claimants' breach of contract nor their
15 breach of the implied covenant of good faith and fair dealing claim is so vague or
16 ambiguous that Varrasso and Russian River cannot frame a response. "To the extent
17 [they] seek[] clarification of [counter-claimants'] specific contentions, discovery,
18 rather than a Rule 12(e) motion, is the proper tool." *Id*. Therefore, Varrasso and
19 Russian River's Motion to Dismiss the first and second causes of action in the
20 counter-claims is **DENIED.**
21       **2. Intentional and Negligent Interference with Prospective Economic**
22           **Relations**
23       A party "seeking to recover for alleged interference with prospective
24 economic relations has the burden of pleading and proving that the defendant's
25 interference was wrongful by some measure beyond the fact of the interference
26 itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal.4th 376, 392-3
27 (1995) (quotation omitted). Simply alleging that a party knowingly interfered with a
28 prospective contract is insufficient. *Id*. This rule is equally applicable to a cause of

action for negligence interference with prospective economic relations. *Lange v. TIG Ins. Co.,* 68 Cal.App.4th 1179, 1187 (1998).

The tort of negligence interference with prospective economic relations also requires the alleging party to plead and prove that the offending party owed the alleging party a duty of care. *Id.*; *J'Aire Corp., v. Gregory*, 24 Cal.3d 799, 803 (1979). "A duty of care may arise through statute or by contract. Alternatively, a duty may be premised upon the general character of the activity in which the defendant engaged, the relationship between the parties or even the interdependent nature of human society." *Id.*

Counter-claimants' causes of action for intentional and negligent interference with prospective economic relations must be dismissed for two reasons. First, counter-claimants fail to allege any conduct that was wrongful beyond the interference itself. Basically, counter-claimants allege no more than a breach of contract that led to the loss of business relationships that "probably would have resulted in economic benefits." (CoCl ¶¶42, 52.) Because counter-claimants fail to plead wrongfulness under *Della Penna,* these causes of action must be dismissed.

Additionally, counter-claimants fail to allege any duty of care owed by Varrasso or Russian River to counter-claimants. Hence, Varrasso's Motion to Dismiss the third and fourth counts in the counter-claims for intentional and negligent interference with prospective economic advantage is **GRANTED**.

### 3.  Intentional Interference with Contract

To plead a cause of action for intentional interference with contract, counter-claimants must allege: (1) it had a contract with a third party, (2) Varrasso and Russian River knew of this contract, (3) Varrasso and Russian River intentionally acted in ways designed to induce the breach or disruption of this contractual relationship, (4) the contractual relationship was actually breached or disrupted, and (5) counter-claimants suffered resulting damage. *Pacific Gas & Electric Co., v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1125 (1990).

In this case, counter-claimants adequately allege that they had contracts with third parties and that Varrasso and Russian River knew of these contracts. (CoCl ¶¶16, 17, 64-65.) However, counter-claimants then allege that Varrasso and Russian River "engaged in wrongful conduct by, directly or indirectly, soliciting, inducing, or engaging, with current and/or former clients and contractual relations of counter-claimants and in direct conflict with the purpose of the agreement between counter-claimants and counter-defendants and among other ways of which counter-claimants are not presently aware, according to proof at trial." (CoCl ¶66.)

The court agrees that this language is hopelessly vague and ambiguous, warranting, if not outright dismissal, a more definite statement. Counter-claimants must allege sufficient facts to state a claim that is plausible on its face. *See Bell Atl.*, 550 U.S. at 578. The Court cannot evaluate from the face of this counter-claim whether counter-claimants have a plausible cause of action or not because confusing, conclusory language is substituted for any factual allegations. Therefore, Varrasso and Russian River's Motion to Dismiss the fifth cause of action is **GRANTED**.

### C. Statute of Limitations

Russian River moves to dismiss the claims against it arguing that the claims are all barred by two-year statutes of limitation. "Although the statute-of-limitations defense is usually raised in a responsive pleading . . . the defense may be raised in a motion to dismiss if the running of the statue is apparent from the face of the complaint." *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 483 n.1 (9th Cir. 1987). A motion to dismiss based on the statute of limitations should be granted "only if the assertions of the complaint, read with required liberality, would not permit the plaintiff to prove that the statute was tolled." *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 119 (9th Cir. 1980).

The Court agrees that the two-year statute of limitations applies to all five causes of action in this case. *See* Cal. C.C.P. §339(1) (statute of limitations for

breach of oral contract is two years); *Krieger v. Nick Alexander Imports, Inc.,* 234 Cal.App.3d 205, 220-21 (1991) (statute of limitations for breach of implied covenant of good faith and fair dealing, when it is based on a contractual theory, is the same as that for breach of the underlying contract); *Murphy v. Hartford Acc. & Indem. Co.,* 177 Cal.App.2d 539, 543-4 (1960) (two-year statute of limitations in Cal. C.C.P. §339(1) is applicable in a tort action where the limitations period is not specifically provided). Furthermore, the Court agrees that, since Russian River is a new party, the fact that the original complaint was filed within the statute of limitations is of no import. *See Trindade v. Superior Court,* 29 Cal. App. 3d 857, 859 (1973) ("As to cross-actions against . . . new parties, it has regularly been held that the statute of limitations is not tolled by the commencement of the plaintiff's action.").

Counter-complainants argue first that Russian River is an alter-ego of Varrasso and thus the separate entity should be ignored. Since the statute of limitations was tolled for Varrasso, they argue, so should it be for Russian River. However, the allegations in the counter-claims are insufficient to establish alter-ego liability.

"Disregarding the corporate form . . . is an extreme remedy [to be] sparingly used." *Pac. Mar. Freight, Inc. v. Foster*, No. 10-cv-578-BRM-BLM, 2010 U.S. Dist. LEXIS 87205 at *16 (S.D. Cal. Aug. 24, 2010). To properly plead an alter-ego theory of liability, counter-complainants must plead first that there is such a "unity of interests and ownership that the separate personalities of the corporation and individual no longer exist" and second that "if the acts are treated as those of the corporation alone, an inequitable result will follow." *Id.* at *17.

In this case, counter-complainants merely allege that Varrasso is the sole owner and sole officer and director of Russian River. (CoCl ¶5.) There are no allegations of commingling of funds, failure to maintain minutes or corporate records, use of corporation as a mere shell, failure to adequately capitalize the

corporation, or any other inequities that would militate in favor of piercing the corporate veil. "An allegation that a person owns all of the corporate stock and makes all of the management decisions is insufficient to cause the court to disregard the corporate entity." *See Leek v. Cooper*, 194 Cal.App.4th 399, 415 (2011).

However, counter-complainants also argue that there is insufficient information on the face of the counter-claim that would allow the Court to determine when the statute of limitations began to run. The Court agrees. A statute of limitations begins to run when the cause of action accrues. *Thomson v. Canyon,* 198 Cal.App.4th 594, 604 (2011). "Generally speaking, a cause of action accrues at the time when the cause of action is complete with all of its elements." *Id.* (internal quotations omitted.) Where "damages are an element of a cause of action, the cause of action does not accrue until damages have been sustained." *Id.* (internal quotations omitted.) "Therefore, when the wrongful act does not result in immediate damage, the cause of action does not accrue prior to the maturation of perceptible harm." *Id.*

All five causes of action alleged in the counter-claims include an element that damages be sustained. *See McKell,* 142 Cal.App.4th at 1489 (breach of contract); *Merced Irr. Dist. v. County of Mariposa,* 941 F. Supp. 2d 1237, 1280 (E.D. Cal. 2013) (breach of implied covenant of good faith and fair dealing); *Korea Supply Co., v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1153 (2003) (interference with prospective economic relationship); *Pac. Gas & Elec.,* 50 Cal. 3d at 1125 (interference with contract). Although the counter-claims allege Russian River and Varrasso breached the agreement on or about July 30, 2013, nothing in the counter-claims allege when damages were incurred. The Court is limited to the face of the counter-claims. Because the Court cannot tell from the face of the counter-claims when the statute of limitations began to run, the Motion to Dismiss on this ground is **DENIED.**

### III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** Varrasso's Motion to Dismiss (ECF No. 123.) The Court denies the Motion with respect to the first and second causes of action in the counter-claim for breach of contract and breach of the implied covenant of good faith and fair dealing. The Court grants the Motion and dismisses the third through fifth causes of action in the counter-claims for intentional and negligent interference with prospective economic relations, and for interference with contract. As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a). Since the Court believes it is possible counter-claimants may be able to amend these causes of action to state a claim, the Court **GRANTS LEAVE TO AMEND** these causes of action. Any amended counter-claims must be filed by **April 25, 2016**.

The Court **DENIES** Russian River's Motion to Dismiss (ECF No. 125) based on the statute of limitations. The issue may be raised as an affirmative defense once the facts surrounding damages are developed.

**IT IS SO ORDERED.**

**DATED: April 5, 2016**

Hon. Cynthia Bashant
United States District Judge